**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL RUIZ and CARMEN LYDIA FRET APONTE,** | : | **CIVIL NO. 1:04-CV-02359** |
| | : | |
| **Plaintiffs** | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **v.** | : | |
| | : | |
| **LEBANON COUNTY, PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

This lawsuit arises from a case of mistaken arrest.  On October 28, 2002, police officers arrived at 63 North 12th Street, Lebanon City, Pennsylvania and arrested Plaintiff Samuel J. Ruiz.  They carried a warrant for the arrest of "Samuel Ruiz," alleged to be residing at 197 Lebanon Village, Lebanon, Pennsylvania.  The Samuel Ruiz arrested on October 28, 2002, was not the same Samuel Ruiz who the police actually sought.  Plaintiff Samuel Ruiz now sues for the mistaken arrest and, with his wife Plaintiff Carmen Lydia Fret Aponte,[1] for the subsequent search of their home and the search of Plaintiff Fret's person.

Defendants,[2]  Detective Martin Barrett and Detective Todd Breiner of the Lebanon County Police Department, swore affidavits of probable cause and criminal complaints that led to the arrest warrant for Samuel Ruiz of 197 Lebanon Village.  They request summary judgment on all claims against them, asserting that

---

[1]  Plaintiff Carmen Lydia Fret Aponte goes by "Ms. Fret." (Fret Dep. 4:16-19, Sept. 6, 2006.)

[2]  Defendants Barrett and Breiner have moved for summary judgment.  The other Defendants in this matter are Lebanon County, Pa., Lebanon City, Pa., the Lebanon City Police Department, the Lebanon County, Pa., Drug Task Force, Lebanon County Prison, Timothy Knight, Richard A. Radwanski, Brett Hopkins, and an Unknown Female Police Officer.  (Doc. 29.)  "Defendants" shall be used to identify only Defendants Barrett and Breiner, going forward.

there is no genuine issue of material fact regarding their involvement with the claims by Plaintiff Fret and that they are protected from suit by the affirmative defense of qualified immunity.  For the reasons that follow, the court will grant their motion for summary judgment on claims by Plaintiff Fret and deny their motion for summary judgment on the grounds of qualified immunity.

I.          **Background**

         **A.    Facts**

        The following facts are undisputed, except where noted.  At issue in this matter are three purchases of illegal drugs and the three corresponding affidavits of probable cause sworn by Defendants Barrett and Breiner.  The affidavits led to the issuance of the arrest warrant executed upon Plaintiff Ruiz.

           **1.   The Drug Buys**

        On June 12, 2002, Defendant Barrett conducted surveillance of a controlled purchase of illegal drugs.  (Doc. 69-1 at 5; Doc. 65 ¶ 6.)  Confidential police informant No. 19-2001 purchased the drugs from a dealer known to the informant as "Peto."  (Doc. 69-1 at 5; Doc. 69-2 ¶ 4; Breiner Dep. 39:23-25, Nov. 29, 2006.)  Defendant Barrett observed the transaction as he drove past the participants.  (Barrett Dep. 9:18-21, Nov. 29, 2006.)  He saw the seller from the back and the side, but never saw his face.  (*Id.* 9:18-23; Doc. 69-2 ¶ 12.)  From what he could see, Defendant Barrett observed that the seller was an Hispanic male with short, dark hair and a thin build, standing about 5'7" to 5'9" tall.  (Barrett Dep. 14:10-15; Doc. 69-2 ¶ 11.)

On June 18, 2002, and July 10, 2002, Defendant Breiner conducted surveillance of controlled purchases of illegal drugs by informant No. 19-2001 and No. 15-2001, respectively, from Peto.[3]  (Doc. 65 ¶ 8; Doc. 69-2 ¶ 4.)  Defendant Breiner never actually saw Peto, but one or both of the informants described him as being a thin Hispanic male with dark hair, standing about 5'6" to 5'8" tall.  (Breiner Dep. 16:21-17:9.)  The confidential informants were the only people to have seen the face of the drug dealer.  No member of the investigating police force saw it. (Doc. 69-2 ¶ 15.)

## 2.   The Investigation

After the drug buys, Defendant Breiner conducted further investigation into Peto's identity and location.  (Barrett Dep. 16:3-17:1.)  He researched the vehicle used in one of the buys and the person who was operating it.  (Breiner Dep. 11:23-12:13.)  His sources included Lebanon Village administration information, driving records, and police records.  (*Id.*)  He learned, through Lebanon Village, that Peto was a nickname for a Samuel Ruiz,[4] residing at 197 Lebanon Village, Lebanon,

---

[3] Defendant Breiner testified that "the" informant had been a reliable source of trustworthy information in the past, but it is not clear from the transcript to which informant he was referring. (Breiner Dep. 11:7-17.)  The only discovery documents before the court that clearly indicate which informant is being discussed are the affidavits of probable cause.

[4] There is a contested issue of fact as to whether Plaintiff Ruiz goes by the nickname "Peto." Plaintiff Fret testified that Plaintiff Ruiz's family nickname is "Peto."  (Fret Dep. 12:6-22.)  She calls him Peto, as do his mother and siblings.  (*Id.*)  Plaintiff Ruiz, however, testified that he has never heard the name Peto.  (Ruiz Dep. 42:24-25, Sept. 7, 2006.)  For purposes of this motion for summary judgment, the question of whether Plaintiff Ruiz actually goes by Peto is not material.

Pennsylvania.[5]  (Breiner Aff.[6] ¶¶ 4-6; Barrett Dep. 19:20-23.)

### 3.   The Affidavits of Probable Cause

Based on information from the confidential informant and his own research, Defendant Breiner swore two criminal complaints and probable cause affidavits against Samuel Ruiz.  (Defs.' Supp. Ex. F; Breiner Aff. ¶ 11; Breiner Dep. 10:25-12:12.)  One, sworn on October 11, 2002, was for the drug buy that occurred on July 10, 2002.  (Defs.' Supp. Ex. F.)  The other, dated October 18, 2002, was for the drug buy that occurred on June 18, 2002.  (*Id.*)  Defendant Barrett relied on his observation of the seller in the first purchase and the information gathered by Defendant Breiner to swear a third criminal complaint and affidavit of probable cause on October 11, 2002, for the drug buy that took place on June 12, 2002.  (*Id.*)

### a.   Detective Breiner's Affidavits

The affidavit for the drug buy on July 10, 2002, is addressed to a Samuel Ruiz residing at 197 Lebanon Village, Lebanon Pennsylvania.  (Defs.' Supp. Ex. F.)  Count one accuses him of knowingly delivering cocaine, or acting as an accomplice in the delivery, to Confidential Informant #15-2001 in exchange for $20. (*Id.*)  Count two alleges criminal use of a communication facility in connection with

---

[5] Defendants' deposition testimony gave the address as 97 Lebanon Village but the criminal complaint and probable cause affidavit list the address as 197 Lebanon Village, as do the affidavits of both Defendants and the arrest warrant.  (Breiner Dep. 12:11-12; Barrett Dep. 19:20-23; Defs.' Supp. Ex. F; Breiner Aff. ¶ 5; Barrett Aff. ¶ 5; Pls.' Ex. E.)  The court will use 197 Lebanon Village as the proper address.

[6] Detectives Breiner and Barrett filed affidavits as Exhibit G and Exhibit J to their motion for summary judgment.  These affidavits set forth their recollection of the events leading to the arrest and search on October 28, 2002.  They are not the same as the affidavits of probable cause at issue, dated in 2002, and attached to Defendants' motion for summary judgment as Supplemental Exhibit F.  To distinguish them, Exhibits G and J will be cited as "[Name] Aff." and the affidavits of probable cause will be cited as "Defs. Supp. Ex. F."

the purported sale of drugs.  Count three alleges that Samuel Ruiz knowingly

delivered heroin, or acted as an accomplice in the delivery, to Confidential

Informant #15-2001 in exchange for $20.  (*Id.*)  The affidavit provides the criminal

statutes violated by the alleged acts.  (*Id.*)  It goes on to state the following:

> Your affiants are Sergeant Brett Hopkins, Detective Todd Breiner, and
> Detective Sergeant Richard A. Radwanski, all members of the Lebanon
> County Detective Bureau/Lebanon County Drug Task Force, Lebanon
> County, Pa.  That your affiants have extensive training and experience in the
> investigation of drug law violations and have been trained in the
> administration of drug field testing.

> On 10 Jul 02, at about 2044hrs, while in the 800 block of E. Crowell Street,
> Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz,
> sold/delivered Cocaine, a schedule II controlled substance, and Heroin, a
> schedule I controlled substance, to Lebanon County Drug Task Force/Drug
> Enforcement Administration confidential informant #15-2001, in exchange
> for the sum of $40.00.

> Your affiants conducted chemical field tests on the suspected Cocaine and
> Heroin.  These tests were positive, respectively, for Cocaine, a schedule II
> controlled substance, and Heroin, a schedule I controlled substance.

> That Samuel Ruiz arranged this Cocaine and Herion delivery via the use of
> a residential and/or cellular phone.

> Your affiants request a warrant of arrest be issued for the named defendant.

(*Id.*)  The affidavit is signed by Defendant Breiner and the other two officers

identified.  (*Id.*)

The October 18, 2002, affidavit was for the drug buy that occurred on

June 18, 2002.  (*Id.*)  It is addressed to a Samuel Ruiz, residing at 197 Lebanon

Village, Lebanon Pennsylvania.  (*Id.*)  Count one accuses him of knowingly

delivering cocaine, or acting as an accomplice in the delivery, to Confidential

Informant #19-2001 in exchange for $20.  (*Id.*)  Count two alleges criminal use of a

communication facility in connection with the purported sale of drugs.  (*Id.*)  The

affidavit provides the criminal statutes violated by the alleged acts.  (*Id.*)  It goes on to state the following:

> Your affiants are Sergeant Brett Hopkins, Ptlm. Timothy Knight, and Detective Todd Breiner, all members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, Lebanon County, Pa.  That your affiants have extensive training and experience in the investigation of drug law violations and have been trained in the administration of drug field testing.
>
> On 18 Jun 02, at about 2030hrs, while in the 800 block of Bowman Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz, sold/delivered Cocaine, a schedule II controlled substance, to Lebanon County Drug Task Force/Drug Enforcement Administration confidential informant #19-2001, in exchange for the sum of $20.00.
>
> Your affiants had a chemical field test conducted on the suspected Cocaine. This test was positive for Cocaine, a schedule II controlled substance.
>
> That Samuel Ruiz arranged this Cocaine delivery via the use of a residential and/or cellular telephone.
>
> Your affiants request a warrant of arrest be issued for the named defendant.

(*Id.*)  The affidavit is signed by Defendant Breiner and the other two officer-affiants. (*Id.*)

### a.    **Detective Barrett's Affidavit**

The affidavit sworn by Detective Barrett is addressed to a Samuel Ruiz, residing at 197 Lebanon Village, Lebanon Pennsylvania.  (*Id.*)  Count one accuses him of knowingly delivering cocaine, or acting as an accomplice in the delivery, to Confidential Informant #19-2001 in exchange for $40.  (*Id.*)  Count two alleges criminal use of a communication facility in connection with the purported sale of drugs.  The affidavit provides the criminal statutes violated by the alleged acts.  (*Id.*) It goes on to state the following:

> Your affiants are Detective Sergeant Richard A. Radwanski, Sergeant Brett Hopkins, and Detective Martin Barrett, all members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, Lebanon County, Pa.

> That your affiants have extensive training and experience in the
> investigation of drug law violations and have been trained in the
> administration of drug field testing.
>
> On 12 Jun 02, at about 1615hrs, while in the 800 block of East Arnold
> Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz,
> sold/delivered Cocaine, a schedule II controlled substance, to Lebanon
> County Drug Task Force/Drug Enforcement Administration confidential
> informant #19-2001, in exchange for the sum of $40.00.
>
> On 12 Jun 02 your affiants conducted a chemical field test on the suspected
> Cocaine.  This test was positive for Cocaine, a schedule II controlled
> substance.
>
> That Samuel Ruiz arranged this Cocaine delivery via the use of a residential
> and/or cellular telephone.
>
> Your affiants request a warrant of arrest be issued for the named defendant.

(*Id.*)  The affidavit is signed by Defendant Barrett and the other two officer-affiants.
(*Id.*)

The three criminal complaints and probable cause affidavits were presented to a magistrate judge.  (*Id.*)  On October 22, 2002, the magistrate issued a warrant for the arrest of Samuel Ruiz.  (Pls.' Ex. E.)  The warrant identified Samuel Ruiz's address as 197 Lebanon Village, Lebanon, Pennsylvania.  (*Id.*)  On October 28, 2002, officers from the Lebanon County Drug Task Force attempted to execute the arrest warrant at 197 Lebanon Village, Lebanon, Pennsylvania.  (Doc. 65 ¶ 12; Doc. 69-2 ¶ 22.)  A resident of that address informed the officers that Samuel Ruiz had moved to 63 North 12th Street, Lebanon City, Pennsylvania.  (Doc. 65 ¶ 13.) The officers went to the second address where they arrested Plaintiff Ruiz and searched the home he shared with Plaintiff Fret and searched Plaintiff Fret's body. (*Id.*; Doc. 69-2 ¶¶ 22-24.)  Defendants testified that they were not present for the arrest and search.  (Barrett Dep. 11:2-6; Barrett Aff. ¶¶ 9-10; Breiner Dep. 13:11-18; Breiner Aff. ¶¶ 9-10.)  Plaintiffs testified that they believed that Defendants were

present because their names were on the arrest warrant, (Ruiz Dep. 68:15-21), but acknowledge that they do not know the identity of every police officer present in their home on the day of the arrest and search, and cannot say with certainty that Defendants were there (*Id.* 68:15-78:23; Fret Dep. 33:11-18).

Defendant Breiner interviewed Plaintiff Ruiz at the police station after his arrest.  When it became clear that Plaintiff Ruiz was arrested because of mistaken identity, he was released. (Breiner Dep. 31:4-8.)

## B.    Procedural History

Plaintiffs filed their second amended complaint on December 30, 2005. (Doc. 29.)  Defendants answered on September 13, 2006, asserting the affirmative defense of qualified immunity.  (Doc. 50.)  Discovery closed on January 15, 2007. (*See* Doc. 60.)  On February 1, 2007, Defendants moved for summary judgment for two reasons:  1) they were not present at Plaintiffs' home at the time of the arrest and search and therefore have no liability based on those events; and 2) they are entitled to qualified immunity.  (Doc. 64.)  Their brief in support of the motion followed on February 8, 2007.  (Doc. 67.)  Plaintiffs filed their brief in opposition on March 19, 2007, arguing that Defendants are not entitled to qualified immunity because they violated Plaintiffs' constitutional rights.[7]  (Doc. 69.)  Defendants replied on April 3, 2007.  (Doc. 70.)  Thus, this matter is ripe for disposition.

## II.       Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[7]  Plaintiffs submitted a motion to amend their brief in opposition because of a typographical error.  (Doc. 71.)  The motion will be granted.

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232.

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

III.         **Discussion**

A.         **The Officers' Presence at the Search**

Defendants are entitled to summary judgment on all claims dependent upon their physical presence at Plaintiffs' home on October 28, 2002. Discovery has failed to produce evidence sufficient to show that they were even present on that date, much less that they committed the acts alleged.[8] *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Both Defendants have stated, under oath, that they were not present at the search. (Barrett Dep. 11:2-6; Barrett Aff. ¶¶ 9-10; Breiner Dep. 13:11-18; Breiner Aff. ¶¶ 9-10.) It is not uncommon for one officer to swear an affidavit of probable cause that is the basis for an arrest warrant which is then executed by a different officer. *See Tyson v. Willauer*, 290 F. Supp. 2d 278, 282-83 (D. Conn. 2003). Plaintiffs attempt to establish a genuine issue of material fact about their presence by alleging that Defendants were there because Defendants' names were on the arrest warrant presented to Plaintiff Ruiz on that day. Plaintiffs offer no proof, however, that Defendants actually participated in the arrest and search. (Ruiz Dep. 68:15-78:23; Fret Dep. 33:11-18.) The simple allegation that Defendants might have been present is sufficient to withstand a motion to dismiss, but it does not provide a basis for the court to conclude that a genuine issue of material fact exists and deny summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir.

_____

[8] Defendants raised this issue in the text of their motion for summary judgment (Doc. 64 ¶ 39), in their statement of undisputed facts (Doc. 65 ¶ 14), and in the fact section of their brief in support of their motion for summary judgment (Doc. 67 at 2). They did not present legal arguments in support of their position but did provide the standard for summary judgment and genuine issues of material fact. Plaintiffs alleged that Defendants were present at the search in their statement of undisputed facts (Doc. 69-2 ¶¶ 22, 24-26), but did not brief the issue. Even so, this court may enter summary judgment because Plaintiffs had notice that the issue was raised and the court may determine whether genuine issues of material fact exist on the record presented. *Madison v. Res. for Hum. Dev., Inc.*, 233 F.3d 175, 181 (3d Cir. 2000).

1995).  Thus, summary judgment will be granted for Defendants to the extent that
their liability turns on being present at the arrest and search.

### B.   Qualified Immunity

Qualified immunity is an affirmative defense for government officials
accused of violating a citizen's constitutional or statutory rights.  *Hunter v. Bryant*,
502 U.S. 224, 227 (1991); *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d
Cir. 2006).  If it applies, qualified immunity provides more than immunity from
recovery of damages.  It "is the 'entitlement not to stand trial or face the other
burdens of litigation.'"  *Thomas*, 463 F.3d at 291 (quoting *Mitchell*, 472 U.S. at
526).  The purpose of the doctrine is to strike the proper balance between the
compelling interests in vindicating citizens' constitutional rights and in public
officials' effective performance of their duties.  *Anderson v. Creighton*, 483 U.S.
635, 639 (1987).  It does not give license to lawless conduct by the police – they are
expected to know that certain conduct will violate statutory and constitutional rights
and are expected to avoid that conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 819
(1982).  Even so, qualified immunity leaves "ample room for mistaken judgments."
*Malley v. Briggs*, 475 U.S. 335, 343 (1986).  It protects "all but the plainly
incompetent or those who knowingly violate the law."  *Id.* at 341; *accord Hunter*,
502 U.S. at 229.  The qualified immunity determination should be made at the
earliest possible stage of litigation, long before trial if possible.  *Hunter*, 502 U.S. at
227-28; *Thomas*, 463 F.3d at 291.

Qualified immunity shields "government officials performing
discretionary functions . . . from liability for civil damages insofar as their conduct
does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."[9]  *Harlow*, 457 U.S. at 818; *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).  A right is "clearly established" when, objectively, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson*, 483 U.S. at 640. Qualified immunity applies when an officer shows that an objectively reasonable officer under the same circumstances would have believed his or her conduct was lawful.  *Hunter*, 502 U.S. at 228; *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997).  If there are "underlying historical facts in dispute that are material to the resolution of the question[ ] whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them," summary judgment is not appropriate.  *Sharrar*, 128 F.3d at 828.

　　　　In the instant matter, the court will not enter summary judgment on qualified immunity because the briefing on the issue by both sides is so lacking in substantive analysis that the adversarial process has foundered.  The crux of Plaintiff Ruiz's cause of action is found in ¶ 61 of the second amended complaint.  (Doc. 29.) It states that "Mr. Ruiz [*sic*] arrest on October 28, 2002, and subsequent imprisonment *was without probable cause*."  (*Id.* ¶ 61 (emphasis added).)  The Fourth Amendment guarantees the right to be free of arrest without probable cause, which right is clearly established.  U.S. Const. amend. IV; *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *Berg v. County of Allegheny*, 219 F.3d 261, 269, 272 (3d Cir. 2000).  Accordingly, when the probable cause basis of an arrest is challenged, the first question is whether the affidavit of probable cause does, in fact, establish

---

[9] State and local law enforcement officers are "government officials" for purposes of the affirmative defense.  *Butz v. Economu*, 438 U.S. 478, 504 (1978); *Orsatti*, 71 F.3d at 483.

probable cause.  If it does, the subsequent arrest was legal and officer-defendants are entitled to summary judgment.  If it does not, the court must inquire whether a reasonably trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant.  *Malley*, 475 U.S. at 345; *Orsatti*, 71 F.3d at 484.

Both parties present at least a passing analysis of the framework of qualified immunity.  But, in spite of the central nature of the probable cause analysis to the question of qualified immunity, the parties offer merely conclusory statements about the probable cause basis for the affidavits in this matter.  From Defendants: their "objectively reasonable investigation led to the issuance of a valid arrest warrant supported by affidavits of probable cause" (Doc. 64 ¶ 38) and their fellow officers "arrested the Plaintiff (Samuel J. Ruiz) pursuant to a valid arrest warrant . . . [that was] properly issued by a district justice with supporting affidavits of probable cause" (Doc. 67 at 8).  From Plaintiffs:  Plaintiff Ruiz was subject to an "illegal arrest." (Doc. 69-1 at 9.)

Defendants' legal discussion of probable cause is limited to a brief section on the law of mistaken identity arrests, supported by two cases, only one of which is controlling upon this court.  (Doc. 67 at 7-8.)  It does not flesh out the legal paradigm according to which the court must judge the affidavits.  Plaintiffs' brief fails entirely in this regard.  It makes allegations that go to completely different issues.  Plaintiffs' brief contends that Defendants violated Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights by "not verifying, after a nearly (4) month period of time, the correct identity of Samuel Ruiz" (Doc. 69-1 at 9), and by "recklessly provid[ing] the incorrect information" in their affidavits of probable

cause (*id.* at 10), which led to Plaintiff Ruiz's "illegal arrest" and the "illegal search of the property and person" of Plaintiff Fret (*id.* at 9-10).  A cause of action for negligent investigation is not stated in their second amended complaint.  (*See* Doc. 29.)  Not having been pled, the argument is improperly made on summary judgment and the court will not entertain it.  The allegation of "reckless disregard for [Plaintiffs'] rights" (*Id.* ¶ 66) is supported in their brief with the mere conclusory statement that Defendants "recklessly provided the incorrect information for the Criminal Complaint and Affidavit of Probable Cause" (Doc. 69-1 at 10).  Plaintiffs offer no legal authority indicating that simple "reckless" provision of information in an affidavit even creates a cause of action.  Accusing an officer of "reckless disregard for the truth" is quite another matter, *see Franks v. Delaware*, 438 U.S. 154 (1978),[10] but that was not the allegation pled in the complaint or raised on summary judgment.

Thus, without the benefit of briefing from the parties to assist its discernment of the legal issues at the heart of this question, the court declines to rule on qualified immunity.  *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 178 (3d Cir. 1990) (declining to rule on an issue "briefed" in one sentence in

---

[10]  If facts were misrepresented or omitted from an affidavit of probable cause, the individual arrested may challenge the affidavit's veracity in a hearing before further proceedings.  *Franks*, 438 U.S. at 164.  The challenger is entitled to such a hearing when his attack is more than conclusory.  *Id.* at 171.

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  *Allegations of negligence or innocent mistake are insufficient.*

*Id.* (emphasis added).  Although *Franks* was decided in the criminal context, the Third Circuit applies this test to affidavits at issue in civil cases under § 1983.  *Wilson*, 212 F.3d at 787.  Plaintiffs' treatment of this matter is too conclusory to state a true challenge to the veracity of the affidavits of probable cause under *Franks* and *Wilson*.

appellant's brief); *City of Moses Lake v. United States*, 458 F. Supp. 2d 1198, 1237 (E.D. Wash. 2006) (declining to decide a matter of law that was not briefed by the parties).  Accordingly, summary judgment on the issue of qualified immunity is improper and will be denied.

**IV.**      **Conclusion**

        Summary judgment will be granted in part and denied in part.  There is no genuine issue of material fact regarding Defendants' participation in the search of the body or home of Plaintiff Fret.  They were not present and did not participate. Summary judgment will be entered for Defendants on claims by Plaintiff Fret to the extent that liability turns on their physical presence at the search .  Summary judgment will be denied on the issue of qualified immunity because the parties failed to sufficiently brief the pertinent issues.


                                    s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge


Dated:  May 4, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL RUIZ and CARMEN LYDIA FRET APONTE,** | : : : | **CIVIL NO. 1:04-CV-02359** |
| **Plaintiffs** | : : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : : | |
| **LEBANON COUNTY, PENNSYLVANIA, et al.,** | : : : | |
| **Defendants** | : | |

## O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The motion for summary judgment by Defendant Todd Breiner and Defendant Martin Barrett is **GRANTED** on all claims by Plaintiffs that turn on their physical presence at Plaintiffs' home on October 28, 2002.

2) The motion for summary judgment by Defendant Todd Breiner and Defendant Martin Barrett is **DENIED** in all other respects.

3) Plaintiffs' motion to amend their brief (Doc. 71) is **GRANTED.**

4) The Clerk of Court shall defer entry of summary judgment until the conclusion of this case.

                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  May 4, 2007.