## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMUEL RUIZ and CARMEN
LYDIA FRET APONTE,

        Plaintiffs

        v.

LEBANON COUNTY,
PENNSYLVANIA, et al.,

        Defendants

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL NO. 1:04-CV-02359

JUDGE SYLVIA H. RAMBO

## M E M O R A N D U M

This lawsuit arises from a case of mistaken arrest. On October 28, 2002, police officers arrived at 63 North 12th Street, Lebanon City, Pennsylvania and arrested Plaintiff Samuel J. Ruiz. They carried a warrant for the arrest of "Samuel Ruiz," alleged to be residing at 197 Lebanon Village, Lebanon, Pennsylvania. The Samuel Ruiz arrested on October 28, 2002, was not the same Samuel Ruiz actually sought by the police. Plaintiff Samuel Ruiz now sues for the mistaken arrest and, with his wife Plaintiff Carmen Lydia Fret Aponte,[1] for the subsequent search of their home and the search of Plaintiff Fret's person.

Defendants,[2] Detective Martin Barrett and Detective Todd Breiner of the Lebanon County Police Department, swore affidavits of probable cause and criminal complaints that led to the arrest warrant for Samuel Ruiz of 197 Lebanon

---

[1] Plaintiff Carmen Lydia Fret Aponte goes by "Ms. Fret." (Fret Dep. 4:16-19, Sept. 6, 2006.)

[2] Defendants Martin Barrett and Todd Breiner have moved for summary judgment. The other Defendants in this matter are Lebanon County, Pa., Lebanon City, Pa., the Lebanon City Police Department, the Lebanon County, Pa., Drug Task Force, Lebanon County Prison, Timothy Knight, Richard A. Radwanski, Brett Hopkins, and an Unknown Female Police Officer. (Doc. 29.) "Defendants" shall be used to identify only Defendants Barrett and Breiner.

Village.  They seek summary judgment on the basis of qualified immunity.  For the reasons that follow, the court will deny their motion.

I.        **Background**

   A.    **Facts**

   The following facts are undisputed, except where noted.  The subset of facts before the court involves three purchases of illegal drugs and the three corresponding affidavits of probable cause sworn by Defendants Barrett and Breiner.  The affidavits led to the issuance of the arrest warrant executed upon Plaintiff Ruiz.

        1.    **The Drug Buys**

   On June 12, 2002, Defendant Barrett conducted surveillance of a controlled purchase of illegal drugs.  (Doc. 69-1 at 5; Doc. 65 ¶ 6.)  Confidential police informant No. 19-2001 purchased the drugs from a dealer known to the informant as "Peto."  (Doc. 69-1 at 5; Doc. 69-2 ¶ 4; Breiner Dep. 39:23-25, Nov. 29, 2006.)  Defendant Barrett observed the transaction as he drove past the participants.  (Barrett Dep. 9:18-21, Nov. 29, 2006.)  He saw the seller from the back and the side, but never saw his face.  (*Id.* 9:18-23; Doc. 69-2 ¶ 12.)  Defendant Barrett's only description of the seller was a Hispanic male with short, dark hair and a thin build, standing about 5'7" to 5'9" tall.  (Barrett Dep. 14:10-15; Doc. 69-2 ¶ 11.)

   On June 18, 2002, and July 10, 2002, Defendant Breiner conducted surveillance of controlled purchases of illegal drugs by informant No. 19-2001 and No. 15-2001, respectively, from a man that one or both of the informants called

"Peto."[3]  (Doc. 65 ¶ 8; Doc. 69-2 ¶ 4.)  Defendant Breiner never personally saw Peto, but one or both of the informants described him as a thin Hispanic male with dark hair, standing about 5'6" to 5'8" tall.  (Breiner Dep. 16:21-17:9.)  The confidential informants were the only individuals  to have seen the face of the drug dealer.  (Doc. 69-2 ¶ 15.)

## 2.   The Investigation

After the drug buys, Defendant Breiner conducted further investigation into Peto's identity and location.  (Barrett Dep. 16:3-17:1.)  He researched the vehicle used in one of the buys and the person who was operating it.  (Breiner Dep. 11:23-12:13.)  His sources included Lebanon Village administration information, driving records, and police records.  (*Id.*)  He learned, through Lebanon Village, that Peto was a nickname for a Samuel Ruiz[4] who lived at 197 Lebanon Village,

---

[3]  Defendant Breiner testified that "the" informant had been a reliable source of trustworthy information in the past, but it is not clear from the transcript to which informant he was referring. (Breiner Dep. 11:7-17.)

[4]  Plaintiff Fret testified that Plaintiff Ruiz's family nickname is "Peto."  (Fret Dep. 12:6-22.) She calls him Peto, as do his mother and siblings.  (*Id.*)  Plaintiff Ruiz, however, testified that he has never heard the name Peto.  (Ruiz Dep. 42:24-25, Sept. 7, 2006.)  For purposes of this motion for summary judgment, the question of whether Plaintiff Ruiz actually goes by Peto is not material.

Lebanon, Pennsylvania.[5]  (Breiner Aff.[6] ¶¶ 4-6; Barrett Dep. 19:20-23.)

### 3.  The Affidavits of Probable Cause

Based on information from the confidential informant and his own research, Defendant Breiner swore two criminal complaints and probable cause affidavits against Samuel Ruiz.  (Defs.' Supp. Ex. F; Breiner Aff. ¶ 11; Breiner Dep. 10:25-12:12.)  One, sworn on October 11, 2002, was for the drug buy that occurred on July 10, 2002.  (Defs.' Supp. Ex. F.)  The other, dated October 18, 2002, was for the drug buy that occurred on June 18, 2002.  (*Id.*)  Defendant Barrett relied on his observation of the seller in the first purchase and the information gathered by Defendant Breiner to swear a third criminal complaint and affidavit of probable cause on October 11, 2002, for the drug buy that took place on June 12, 2002.  (*Id.*)

### a.  Detective Breiner's Affidavits

The affidavit for the drug buy on July 10, 2002, is addressed to a Samuel Ruiz residing at 197 Lebanon Village, Lebanon Pennsylvania.  (Defs.' Supp. Ex. F.)  Count one accuses him of knowingly delivering cocaine, or acting as an accomplice in the delivery, to Confidential Informant #15-2001 in exchange for $20. (*Id.*)  Count two alleges criminal use of a communication facility in connection with

---

[5] Defendants' deposition testimony gave the address as 97 Lebanon Village but the criminal complaints and probable cause affidavits list the address as 197 Lebanon Village, as do the affidavits of both Defendants and the arrest warrant.  (Breiner Dep. 12:11-12; Barrett Dep. 19:20-23; Defs.' Supp. Ex. F; Breiner Aff. ¶ 5; Barrett Aff. ¶ 5; Pls.' Ex. E.)  The court will use 197 Lebanon Village as the correct address.

[6] Detectives Breiner and Barrett filed affidavits as Exhibit G and Exhibit J to their motion for summary judgment.  These affidavits set forth their recollection of the events leading to the arrest and search on October 28, 2002.  They are not the same as the affidavits of probable cause at issue, dated in 2002, and attached to Defendants' motion for summary judgment as Supplemental Exhibit F.  To distinguish them, Exhibits G and J will be cited as "[Name] Aff." and the affidavits of probable cause will be cited as "Defs.' Supp. Ex. F."

the purported sale of drugs.  Count three alleges that Samuel Ruiz knowingly delivered heroin, or acted as an accomplice in the delivery, to Confidential Informant #15-2001 in exchange for $20.  (*Id.*)  The affidavit provides the criminal statutes violated by the alleged acts.  (*Id.*)  It goes on to state the following:

> Your affiants are Sergeant Brett Hopkins, Detective Todd Breiner, and Detective Sergeant Richard A. Radwanski, all members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, Lebanon County, Pa.  That your affiants have extensive training and experience in the investigation of drug law violations and have been trained in the administration of drug field testing.
>
> On 10 Jul 02, at about 2044hrs, while in the 800 block of E. Crowell Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz, sold/delivered Cocaine, a schedule II controlled substance, and Heroin, a schedule I controlled substance, to Lebanon County Drug Task Force/Drug Enforcement Administration confidential informant #15-2001, in exchange for the sum of $40.00.
>
> Your affiants conducted chemical field tests on the suspected Cocaine and Heroin.  These tests were positive, respectively, for Cocaine, a schedule II controlled substance, and Heroin, a schedule I controlled substance.
>
> That Samuel Ruiz arranged this Cocaine and Heroin delivery via the use of a residential and/or cellular phone.
>
> Your affiants request a warrant of arrest be issued for the named defendant.

(*Id.*)  The affidavit is signed by Defendant Breiner and the other two officers identified.  (*Id.*)

The October 18, 2002, affidavit was for the drug buy that occurred on June 18, 2002.  (*Id.*)  It is addressed to a Samuel Ruiz, residing at 197 Lebanon Village, Lebanon Pennsylvania.  (*Id.*)  Count one accuses him of knowingly delivering cocaine, or acting as an accomplice in the delivery, to Confidential Informant #19-2001 in exchange for $20.  (*Id.*)  Count two alleges criminal use of a communication facility in connection with the purported sale of drugs.  (*Id.*)  The

affidavit provides the criminal statutes violated by the alleged acts.  (*Id.*)  It goes on
to state the following:

> Your affiants are Sergeant Brett Hopkins, Ptlm. Timothy Knight, and
> Detective Todd Breiner, all members of the Lebanon County Detective
> Bureau/Lebanon County Drug Task Force, Lebanon County, Pa.  That
> your affiants have extensive training and experience in the investigation
> of drug law violations and have been trained in the administration of
> drug field testing.
>
> On 18 Jun 02, at about 2030hrs, while in the 800 block of Bowman
> Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz,
> sold/delivered Cocaine, a schedule II controlled substance, to Lebanon
> County Drug Task Force/Drug Enforcement Administration confidential
> informant #19-2001, in exchange for the sum of $20.00.
>
> Your affiants had a chemical field test conducted on the suspected
> Cocaine.  This test was positive for Cocaine, a schedule II controlled
> substance.
>
> That Samuel Ruiz arranged this Cocaine delivery via the use of a
> residential and/or cellular telephone.
>
> Your affiants request a warrant of arrest be issued for the named
> defendant.

(*Id.*)  The affidavit is signed by Defendant Breiner and the other two officer-affiants.
(*Id.*)

### b.   <u>Detective Barrett's Affidavit</u>

The affidavit sworn by Detective Barrett on October 11, 2002, is
addressed to a Samuel Ruiz, residing at 197 Lebanon Village, Lebanon
Pennsylvania.  (*Id.*)  Count one accuses him of knowingly delivering cocaine, or
acting as an accomplice in the delivery, to Confidential Informant #19-2001 in
exchange for $40.  (*Id.*)  Count two alleges criminal use of a communication facility
in connection with the purported sale of drugs.  The affidavit provides the criminal
statutes violated by the alleged acts.  (*Id.*)  It goes on to state the following:

Your affiants are Detective Sergeant Richard A. Radwanski, Sergeant Brett Hopkins, and Detective Martin Barrett, all members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, Lebanon County, Pa. That your affiants have extensive training and experience in the investigation of drug law violations and have been trained in the administration of drug field testing.

On 12 Jun 02, at about 1615hrs, while in the 800 block of East Arnold Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz, sold/delivered Cocaine, a schedule II controlled substance, to Lebanon County Drug Task Force/Drug Enforcement Administration confidential informant #19-2001, in exchange for the sum of $40.00.

On 12 Jun 02 your affiants conducted a chemical field test on the suspected Cocaine. This test was positive for Cocaine, a schedule II controlled substance.

That Samuel Ruiz arranged this Cocaine delivery via the use of a residential and/or cellular telephone.

Your affiants request a warrant of arrest be issued for the named defendant.

(*Id.*) The affidavit is signed by Defendant Barrett and the other two officer-affiants. (*Id.*)

The three criminal complaints and probable cause affidavits were presented to a magistrate judge. (*Id.*) On October 22, 2002, the magistrate issued a warrant for the arrest of Samuel Ruiz. (Pls.' Ex. E.) The warrant identified Samuel Ruiz's address as 197 Lebanon Village, Lebanon, Pennsylvania. (*Id.*) On October 28, 2002, officers from the Lebanon County Drug Task Force attempted to execute the arrest warrant at 197 Lebanon Village, Lebanon, Pennsylvania. (Doc. 65 ¶ 12; Doc. 69-2 ¶ 22.) A resident of that address informed the officers that Samuel Ruiz had moved to 63 North 12th Street, Lebanon City, Pennsylvania. (Doc. 65 ¶ 13.) The officers went to the second address where they arrested Plaintiff Ruiz and searched the home he shared with Plaintiff Fret and searched Plaintiff Fret's body.

(*Id.*; Doc. 69-2 ¶¶ 22-24.)  Defendants were not present for the arrest and search. (Doc. 77 at 10.)

Defendant Breiner interviewed Plaintiff Ruiz at the police station after his arrest.  When it became clear that Plaintiff Ruiz was arrested because of mistaken identity, he was released. (Breiner Dep. 31:4-8.)

## B.    <u>Procedural History</u>

The allegations giving rise to this action are stated in the second amended complaint filed by Plaintiffs on December 30, 2005.  (Doc. 29.)  They claim violation of their rights preserved by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[7]  (*Id.* at ¶ 64.)  On February 1, 2007, Defendants moved for summary judgment for two reasons:  1) they were not present at Plaintiffs' home at the time of the arrest and search and therefore have no liability based on those events; and 2) they are entitled to qualified immunity.  (Doc. 64.)  The court granted summary judgment on the first argument and denied summary judgment on the second for inadequate briefing.  (Doc. 77.)  Defendants moved for reconsideration of the denial of qualified immunity or, in the alternative, for leave to file supplemental briefing on the issue.  (Doc. 79.)  The court granted leave to file supplemental briefing (Doc. 86) which is now complete (Docs. 87-88).  The matter is ripe for disposition.

---

[7]  Plaintiffs refer to the Pennsylvania Constitution in their complaint (Doc. 29 ¶ 68) but do not state a claim for relief thereunder.  Accordingly, the court will analyze their claims under federal constitutional law only.

## II.        **Legal Standard**

_____Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232.

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to

less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.          Discussion

"The general rule of qualified immunity is intended to provide government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages. Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quotation and citation omitted). The Supreme Court set forth the order of inquiry on qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[8]  *See also Wright v. City of Phila.*, 409 F.3d 595, 600-01 (3d Cir. 2005). The threshold question is this: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

---

[8] In its most recently concluded term, the Supreme Court indicated some willingness to reconsider the "rigid order of battle" prescribed by *Saucier* which places the constitutional question as the first item for analysis. *Scott v. Harris*, — U.S. —, 127 S. Ct. 1769, 1774 n.4 (2007). Justice Breyer has repeatedly argued that a trial court should be permitted to determine the qualified immunity question before reaching the constitutional question, depending on the facts and law presented in each case. *See Morse v. Frederick*, — U.S. —, 127 S. Ct. 2618, 2641-42 (2007) (Breyer, J., dissenting); *Brosseau v. Haugen*, 543 U.S. 194, 201-02 (2004) (Breyer, J., concurring). Legal scholars and other judges are of the same mind as Justice Breyer. *See Morse*, 127 S. Ct. at 2642 (collecting criticism of *Saucier*'s rule). The critics' strongest argument is that the *Saucier* analysis requires a court to reach and decide sometimes-difficult constitutional questions when an issue could be more easily resolved under the principles of qualified immunity. This practice may waste judicial resources and shield an erroneous constitutional holding from correction on appellate review. *Id.* at 2641. It certainly requires a court to "violate[ ] the longstanding principle that courts should 'not . . . pass on questions of constitutionality . . . unless such adjudication is unavoidable.'" *Id.* (quoting *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)).

While *Saucier* may be falling out of favor for good reason, it remains the law of the land. Thus, this court will proceed with the analysis as prescribed.

right?" *Saucier*, 533 U.S. at 201; *accord Scott v. Harris*, — U.S. —, 127 S. Ct. 1769, 1774 (2007). If no constitutional violation is shown, the inquiry need not progress because the officers are entitled to judgment in their favor. *Saucier*, 533 U.S. at 201.

If the facts alleged demonstrate a constitutional violation, the court must ask whether the constitutional right was clearly established at the time, in light of the specific context of the case at bar. *Id.*; *Curley v. Klem*, — F.3d —, No. 05-4701, 2007 WL 2404803, at *17 (3d Cir. Aug. 24, 2007). The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Anderson*, 483 U.S. at 640 ("in the light of pre-existing law the unlawfulness must be apparent"). If the constitutional right was not clearly established at the time of the incident in question, summary judgment must be granted for the officer. *Saucier*, 533 U.S. at 202.

If, however, the constitutional right was clearly established, the court must determine whether the officer made a reasonable mistake about what the law required of him at the time. *Anderson*, 483 U.S. at 641; *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). "It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205. Thus, for example, an officer "can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in [that] situation[ ] courts will not hold that they have violated the Constitution." *Id.* at 206.

The Third Circuit recently clarified the respective roles of the court and the jury on the question of qualified immunity. "[W]hether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley*, 2007 WL 2404803, at *25; *Carswell*, 381 F.3d at 242. If there are material facts in dispute regarding the event or events in question, a jury may make findings of fact to assist the court in determining whether the officer's mistake was reasonable and qualified immunity applies. *Curley*, 2007 WL 2404803, at *23; *Carswell*, 381 F.3d at 242. Here, the qualified immunity analysis turns on the contents of the affidavits of probable cause in support of the arrest warrant issued for Samuel Ruiz. The contents of the affidavits are not in dispute. *C.f. Blaylock v. City of Phila.*, — F.3d —, No. 06-2785, at *10 (3d Cir. Oct. 1, 2007).

A.   **Viewing the facts in the light most favorable to Plaintiffs, was a constitutional right violated?**

The crux of the question before the court is found in ¶ 61 of the second amended complaint. (Doc. 29-1.) It states, "Mr. Ruiz['s] arrest on October 28, 2002, and subsequent imprisonment *was without probable cause*."[9] (Doc. 29-1 ¶ 61

---

[9] Plaintiffs' brief in opposition argues that Defendants violated Plaintiffs' constitutional rights by conducting a negligent investigation and recklessly providing incorrect information in their affidavits of probable cause. (Doc. 88 at 5-8.) Causes of action for negligent investigation and reckless provision of information are not stated in their second amended complaint, therefore the court will not entertain these arguments on summary judgment.

Moreover, if facts are misrepresented or omitted from an affidavit of probable cause, the individual arrested may challenge the affidavit's veracity in a hearing before the case proceeds. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Allegations of negligence or*

(continued...)

(emphasis added).)  The Fourth Amendment guarantees the right to be free of arrest without probable cause.[10]  U.S. Const. amend. IV; *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). Therefore, the court must determine whether the affidavits of probable cause in this matter establish probable cause for arrest.  If they do, the arrest of Plaintiff Ruiz was legal even if mistaken,[11] and Defendants are entitled to summary judgment because no constitutional violation occurred.  If the affidavits of probable cause do not establish probable cause, the court will proceed to the qualified immunity analysis.

An affidavit of probable cause must state facts showing the "fair probability" that the proposed target of arrest engaged in criminal activity.  *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000); *see Illinois v. Gates*, 462 U.S. 213, 235 (1983).  The contents of the affidavit should enable the magistrate to make a practical, common-sense decision whether, considering the totality of the circumstances, probable cause exists to arrest the person accused.  *Gates*, 462 U.S.

---

(...continued)
*innocent mistake are insufficient.*"  *Id.* (emphasis added).  Although *Franks* was decided in the criminal context, the Third Circuit applies this test to civil cases under § 1983.  *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).  Plaintiffs' conclusory arguments would not trigger a *Franks* hearing.

[10] Because the constitutionality of arrests by state officials is governed by the specific terms of the Fourth Amendment, a due process analysis is not appropriate.  *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

[11] Cases of mistaken identity, unfortunately, will occur but "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation . . . ."  *Thompson v. Prince William County*, 753 F.2d 363, 364 (4th Cir. 1985).  "[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."  *Hill v. California*, 401 U.S. 797, 802 (1971).  Thus, on a claim for false arrest, the court is not to inquire whether the person arrested actually committed the offense.  *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).  The proper inquiry is whether there was probable cause to arrest the true target.  *Id.*; *Green v. City of Paterson*, 971 F. Supp. 891, 903 (D.N.J. 1997).

at 232, 238 (probable cause "is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."); *see United States v. Ventresca*, 380 U.S. 102, 108 (1965); *Aguilar v. Texas*, 378 U.S. 108, 113 (1964) *abrogated on other grounds by Gates*, 462 U.S. at 228.  The facts may be derived from the personal observations of the affiant or from hearsay evidence, *Ventresca*, 380 U.S. at 108, but the affidavit must disclose which information is based on the affiant's own personal observations and which information is hearsay, *United States v. Whiteley*, 401 U.S. 560, 565 (1971); *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 543 (W.D. Ky. 2005).  The requirement that an affidavit state *facts* rather than *conclusions* preserves the Fourth Amendment's requirement that "the inferences from the facts which lead to the complaint '(must) be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Aguilar*, 378 U.S. at 112-13 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)); *accord Gates*, 462 U.S. at 239.  A magistrate "should not accept without question the complainant's mere conclusion." *Aguilar*, 378 U.S. at 113; *accord Gates*, 462 U.S. at 239.

When, as in the instant matter, police rely on a confidential informant to provide some of the information in an affidavit, the magistrate must be informed of 1) some of the underlying circumstances supporting the informant's story and 2) some of the underlying circumstances leading to the affiant's conclusion that the informant may be believed. *Gates*, 462 U.S. at 231.  Specific facts that establish the informant's "veracity, reliability and basis of knowledge" are highly relevant to determining whether the totality of the circumstances show probable cause for

14

arrest.[12]  *Id.* at 230, 233.  An informant may be shown to be credible and reliable when the affidavit contains facts of previous cooperation by the same informant that led to investigations, arrests, or convictions.  *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000); *see Gates*, 462 U.S. at 233.  The basis of an informant's knowledge is demonstrated by describing the informant's first-hand account of illegal activity, supported by sufficient detail.  *Gates*, 462 U.S. at 234.  The officer should also set forth the facts of his or her own investigation that corroborate the illegal activity alleged by an informant.  *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005); *see Gates*, 462 U.S. at 226.  Corroboration of innocuous details about the proposed target of arrest is not sufficient.  *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000); *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996).  Ultimately, "if a tip has a relatively low degree of reliability, more [corroborating] information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."  *Alabama v. White*, 496 U.S. 325, 330 (1990).

The following examples demonstrate the difference between affidavits that properly establish probable cause by being factually specific and following the standards governing information from a confidential informant versus those that do not.  In *McCray v. Illinois*, 386 U.S. 300, 304 (1967), an affidavit established

---

[12]  Before *Illinois v. Gates*, courts used a two-prong test to determine whether a confidential informant's information could provide at least a partial basis to find probable cause, a "basis of knowledge" prong and a "veracity" prong.  *See Gates*, 462 U.S. at 229 n.4.  Information about the informant had to satisfy both prongs to contribute to establishing probable cause.  *Id.*  If it failed one prong of the test, the information was discounted.  *Id.* at 230 n.5.  The *Gates* court eliminated the independent nature of the prongs in favor of the totality-of-the-circumstances approach, but affirmed that an informant's veracity, reliability, and basis of knowledge remain highly relevant in determining the value of his information.  *Id.* at 230.  Thus, aspects of pre-*Gates* case law discussing these qualities of an informant's information remain good law and are cited throughout.

probable cause when officers described "with specificity what the informer actually said, and why the officer thought the information was credible." They relayed the underlying circumstances leading to the informant's knowledge of the location of a cache of narcotics. *Id.* They also personally observed the target of the arrest and described their observations to the issuing magistrate. *Id.* These details in the affidavit led to a sound finding of probable cause to arrest. *Id.*; *see also Pansy v. Preate*, 870 F. Supp. 612, 625-26 (M.D. Pa. 1994) (a twenty-two page affidavit, supported by "extensive documentation from surveillance and testimony from eyewitnesses show[ed] the presence of probable cause").

The Eastern District of Pennsylvania recently held that a judicial officer had a substantial basis for concluding that probable cause existed to issue a search warrant when the supporting affidavit set forth information from a confidential police informant "who previously had provided police with information leading to arrests and contraband[,] who was actively assisting police in other investigations," and who had never provided faulty information. *United States v. Porter*, 438 F. Supp. 2d 554, 556, 558 (E.D. Pa. 2006). The informant gave detailed information about the defendant including his possession of a firearm (in violation of his parole), the name of the person with whom he was staying, and an in-person identification of the building in which the defendant lived. *Id.* at 556, 558. The informant was "intimately familiar" with the neighborhood in which the residence to be searched was located. *Id.* at 556. The affidavit further stated that the officer corroborated the defendant's whereabouts with the defendant's father. *Id.*

The factually specific and constitutionally sound affidavits of probable cause in *McCray* and *Porter* stand in stark contrast to affidavits found to violate the

Fourth Amendment requirements.  In *Aguilar v. Texas*, officers presented an affidavit in support of an application for a search warrant that read, in pertinent part, "[a]ffiants have received reliable information from a credible person" and accordingly believed that drugs and drug paraphernalia were being kept at the target residence.  378 U.S. at 109.  The Supreme Court held that this statement did not provide probable cause to issue the subsequent search warrant because it stated conclusions, not facts.  *Id.* at 114.  The Court observed that the magistrate should have been "informed of some of the underlying circumstances . . . from which the officer concluded that the informant, whose identity need not be disclosed, was 'credible' or his information 'reliable.'"  *Id.* (citation omitted).  Without such information, "the inferences from the facts which lead to the complaint [were] drawn not by a neutral and detached magistrate, as the Constitution requires, but instead, by a police officer engaged in the often competitive enterprise of ferreting out crime or, as in this case, by an unidentified informant."  *Id.* at 115 (quotations and citations omitted); *see also Giordenello v. United States*, 357 U.S. 480 (1958); *Nathanson v. United States*, 290 U.S. 41 (1933); *Danhauer*, 229 F.3d at 1006; *United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir. 1996).

The Third Circuit, in *DeAngelo v. Yeager*, 490 F.2d 1012 (3d Cir. 1973), held constitutionally invalid the following affidavit made in support of a request for a search warrant:

> [T]hrough information received from a reliable informant who has given information on previous occasions which resulted in arrests and convictions and who has and must remain anonymous states that telephone number 684-4970 is being used for Lottery Bets and Bookmaking Bets all day from Monday to Saturday by a white male, Emilio DeAngelo of 464 No. 11 St. to which the telephone number is connected to. . . . The undersigned made observations and investigations on Monday, February 24, 1969 from 10:00 A.M. to 12:00 noon and

17

> again on Tuesday, February 25, 1969, from 11:00 A.M. to 1:00 P.M. and again from 2:00 P.M. to 3:30 P.M. and during these observations the undersigned did observe several white males and females walk to the said location, stay for a short period of time and then leave.  Also this telephone number has been called several times and most of the time the telephone was busy, and when it was not busy a man would answer after a short ring and just say hello.  The telephone number was again redialed and again the telephone was busy for a few minutes and after a short period upon redialing a man would again answer after a short ring, just saying hello.

*Id.* at 1013-14.  This affidavit gave "no information as to the factual basis of the informant's conclusion that a stated telephone number at a stated address is being used for [illegal activity]. . . . [T]he magistrate had no basis for exercising his required independent judgment whether the informant's conclusion was more than surmise or repetition of rumor."  *Id.* at 1014.  The court further observed that the personal observations by the affiant corroborated innocuous details about the target, rather than the informant's allegation of illegal activity.  *Id.*  Last, the court found the affiant's statement that information from the informant had led to convictions in the past provided the magistrate with "some basis for concluding that the informant was not an irresponsible person," but did not provide "data sufficient to enable [the magistrate] to judge whether any essential conclusory statement of the informant is more than speculation or surmise . . . ."  *Id.* at 1014-15; *see United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003); *Wilhelm*, 80 F.3d at 118, 120.  For all of these reasons, the affidavit failed to establish probable cause.  *DeAngelo*, 490 F.2d at 1015.

Having examined the standards applicable to probable cause, the court turns to the standard applicable to its review of the magistrate's conclusion that the affidavits at issue here established probable cause.  This court must determine whether the information contained within the four corners of the affidavit provided a

substantial basis for the magistrate to have concluded that probable cause existed. *Gates*, 462 U.S. at 236; *Ritter*, 416 F.3d at 264; *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir. 1993); *see United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000).   Evidence presented to the reviewing court that was not before the issuing magistrate must be ignored.   *Aguilar*, 378 U.S. at 109 n.1.   This review is highly deferential to the magistrate's original determination and the "temptation to second-guess [that] conclusion should be avoided."   *Ritter*, 416 F.3d at 264; *see Gates*, 462 U.S. at 236 *; Spinelli v. United States*, 393 U.S. 410, 419 (1969) *abrogated on other grounds by Gates*, 462 U.S. at 228.   In a doubtful or marginal case, the matter "should be largely determined by the preference to be accorded to warrants." *Ventresca*, 380 U.S. at 109; *Ritter*, 416 F.3d at 264.   Even so, the reviewing court must evaluate the affidavit mindful of the legal standards governing probable cause to ensure that the protections inherent in the Fourth Amendment are enforced.   *See Gates*, 462 U.S. at 239; *Ventresca*, 380 U.S. at 111-12.   The deference afforded the magistrate's finding of probable cause is "no refuge for [evident] legal error." *Ritter*, 416 F.3d at 275 (Smith, J., dissenting in part and concurring in the judgement).

With this background, the court turns to the content within the four corners of the affidavit in this matter and concludes that the magistrate did not have a substantial basis for finding probable cause to arrest.   The first two pages of each affidavit set forth conclusory statements that Samuel Ruiz committed the crimes cited therein.   Each affidavit verifies that its contents "are true and correct to the best of [each affiant's] knowledge or information and belief," but none of the affidavits establish the *factual basis* for the affiants' knowledge or information and belief.

The court will discuss only one of the affidavits as they are all virtually identical for purposes of this analysis.

> Your affiants are Sergeant Brett Hopkins, Detective Todd Breiner, and Detective Sergeant Richard A. Radwanski, all members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, Lebanon County, Pa. That your affiants have extensive training and experience in the investigation of drug law violations and have been trained in the administration of drug field testing.

> On 10 Jul 02, at about 2044hrs, while in the 800 block of E. Crowell Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz, sold/delivered Cocaine, a schedule II controlled substance, and Heroin, a schedule I controlled substance, to Lebanon County Drug Task Force/Drug Enforcement Administration confidential informant #15-2001, in exchange for the sum of $40.00.

> Your affiants conducted chemical field tests on the suspected Cocaine and Heroin. These tests were positive, respectively, for Cocaine, a schedule II controlled substance, and Heroin, a schedule I controlled substance.

> That Samuel Ruiz arranged this Cocaine and Heroin delivery via the use of a residential and/or cellular phone.

The first and third paragraphs are unobjectionable. The affiants have personal knowledge of the facts stated therein. The second and fourth paragraphs – sentences, really – are the sources of this affidavit's constitutional infirmity. They state the affiants' conclusion that Samuel Ruiz sold drugs on the date and time identified, arranging the transaction by telephone. There are no facts or circumstances that would allow the *magistrate* to draw the inference, as required by the Fourth Amendment – such as how the affiants came to know that the seller's name was Samuel Ruiz. *See Gates*, 462 U.S. at 232, 238; *Ventresca*, 380 U.S. at 108; *Aguilar*, 378 U.S. at 113. Were the affiants able to make a personal identification of the dealer because they observed the drug transaction and they personally recognized the seller as someone who has sold drugs in the past? Did the

affiants get an identification from someone else, which they investigated and corroborated with additional facts?  On the face of this affidavit, the issuing magistrate had no way to connect the drug transaction to someone named Samuel Ruiz.  On this basis alone, the affidavit fails to establish probable cause.

Moreover, the affidavit states that a confidential informant purchased the drugs from Samuel Ruiz.  It appears from the face of the affidavit that the informant's only involvement in this case was just that – the purchase.  The affidavit fails to relate that the police relied on one or both informant's informal identification of the seller by the nickname "Peto" to begin their investigation of the seller's identity.  Thus, the allegation in the affidavit that Samuel Ruiz sold cocaine was not derived solely from the personal observations and investigation of the affiants.  It came, in part, from information supplied by a confidential informant.  Failing to relate that operative fact was error.  *See Whiteley*, 401 U.S. at 565; *Butts*, 374 F. Supp. 2d at 543.  Not having disclosed that some information leading to the identification of the drug dealer had been received from a confidential informant, the affiants also failed to set forth any factual support for the informant's credibility, reliability, veracity, or basis of knowledge.  They did not provide facts that would corroborate or confirm the informal identification of the seller as "Samuel Ruiz."

Police officers are not required to "relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip" to establish probable cause.  *Wilson*, 212 F.3d at 787.  An affidavit of probable cause may not be "judged as an entry in an essay contest."  *United States v. Harris*, 403 U.S. 573, 582 (1971).  The Fourth Amendment, however, demands more than conclusory haiku.  For all of the reasons

stated above, these affidavits are reminiscent of the constitutionally infirm affidavits in *Aguilar* and *DeAngelo*.  They contain none of the factual information that validated the affidavits in *McCray* and *Porter*.  They failed, as a matter of Fourth Amendment jurisprudence, to provide a substantial basis for the magistrate to find probable cause to arrest.

> **B.** **Was the constitutional right clearly established at the time of the incident in light of the specific context of this case?**

This inquiry as to whether a right was clearly established is governed by the specific context of the case, not by broad propositions of law.  *Saucier*, 533 U.S. at 202; *Curley*, 2007 WL 2404803, at *17; *Bartholomew v. Pennsylvania*, 221 F.3d 425, 429 (2000).  The right to be free of arrest without probable cause was clearly established at the time Defendants submitted their affidavits of probable cause.  *See* U.S. Const. amend IV; *Berg*, 219 F.3d at 269; *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).  The following standards governing the probable cause determination were also clearly established at that time:  that a magistrate must find probable cause from the facts and circumstances presented within the affidavit and not from conclusory statements without apparent factual basis, *Gates*, 462 U.S. at 239; *Aguilar*, 378 U.S. at 113-14; *Johnson*, 333 U.S. at 14; that affiants must distinguish between their own personal observations and information provided by others, *Whiteley*, 401 U.S. at 565; *see Ventresca*, 380 U.S. at 108; and that affiants must set forth the facts and circumstances indicating the truthfulness, credibility, and reliability of information provided by a confidential informant or provide corroborating information from their own activities, *Gates*, 462 U.S. at 239.

### C. Did Defendants make an objectively reasonable mistake about what the law required of them at the time they signed the probable cause affidavits?

The objective reasonableness inquiry will benefit from a statement of the issues *not* before the court.  At the time Defendants swore these affidavits, they were not faced with making a split-second decision in the "dangerous and complex world" of law enforcement.  *Carswell*, 381 F.3d at 244 (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)); *see Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997) (objective reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation") (quotation omitted) *abrogated on other grounds by Curley*, 2007 WL 2404803, at *25.  Rather, four months after the events giving rise to the affidavits, at least one officer took a moment to sit down and write these affidavits of probable cause with time to reflect on both the facts pertinent to the affidavits and the law governing his submission.  The only facts pertinent to the question of their objective reasonableness in seeking the warrants are contained within the four corners of their affidavits.[13]

If a "reasonably well-trained officer in [Defendants'] position would have known that his affidavit failed to establish probable cause," he will lose the

---

[13] Defendants set forth numerous facts within their personal knowledge at the time the affidavits were sworn – but not included in the text of the affidavits – that, they argue, established probable cause.  These facts are inapposite to the present analysis.  If the arrest had been made without a warrant, a different standard of probable cause would apply – whether "at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that [the target] had violated [the law]."  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quotation omitted).  Because Defendants sought a warrant in this matter, facts not contained within the affidavits of probable cause are not properly considered in the objective reasonableness determination here.

shield of qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *accord Wilson*, 212 F.3d at 789-90; *see Groh v. Ramirez*, 540 U.S. 551, 565 (2004). "[A]n officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause." *Malley*, 475 U.S. at 343. "[I]f no officer of reasonable competence would have requested the warrant, *i.e.*, [the] request is outside the range of the professional competence expected of an officer," the officer's action "is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty." *Id.* at 346 n.9. Such reflection by an officer-affiant is "desirable, because it reduces the likelihood that the officer's request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent . . . ." *Id.* at 343-44.

The Supreme Court did not reach the question of the constitutional validity of the arrest warrant in *Malley*, nor did it examine the officer-affiant's objective reasonableness in seeking the warrant. Two cases that follow *Malley*, with facts similar to those at hand, are instructive. In the Eastern District of Kentucky, a criminal complaint used to secure an arrest warrant stated that the target of arrest:

> [u]nlawfully and intentionally rendered assistance to Corey Butts (who is being sought on a warrant for Rape 1st degree) by providing him with transportation to an unknown location. The defendant knew that [police] were attempting to locate and arrest Corey Butts for Rape 1st degree. All in violation of KRS 520.130 hindering apprehension second degree.

*Butts*, 374 F. Supp. 2d at 535. The warrant was issued and the target was arrested. *Id.* at 538. In the subsequent civil suit for arrest without probable cause, the officer

claimed that a witness gave him the information stated in the affidavit. *Id.* at 541.
Nothing in the affidavit indicated that the information was based on anything but his
own personal knowledge. *Id.* Because the officer had not "given the witness's
name, a statement about how he knew the witness, any facts about whether the
witness was reliable, or an affidavit from the witness," the district court held that the
magistrate did not have a substantial basis to find probable cause. *Id.* at 542.
Further, "[i]t is unreasonable for [the officer-affiant] not to present all of the facts to
the judge so that the judge can make a neutral and independent determination of
probable cause." *Id.* at 544. "[A]ny reasonably trained officer should have known"
that a "bare-bones, conclusory affidavit does not establish probable cause." *Id.*
"[A]ny reasonable officer would have known that additional information about [t]he
reliability of the witnesses was required to establish probable cause." *Id.* Qualified
immunity was denied because an objectively reasonable officer would have known
that the affidavit failed to establish probable cause. *Id.*

In *Montes v. Gallegos*, 812 F. Supp. 1159 (D.N.M. 1992), the court
examined an affidavit of probable cause stating that:

> Battery:  When Defendant did commit the crime of Battery, Battering
> Paul George Lacome, Mark Lacome and Anselmo Duran.
> Disorderly Conduct:  When Defendant did act in a boisterous loud
> manner at Monte Carlo Lounge.
> Public Affray:  When Defendant did engage in Public fighting causing
> injury to another person.
> Criminal Damages to property:  When Defendant did commit the crime
> of damages to peroperty [sic] by breaking a window in the Monte Carlo
> Lounge.

*Id.* at 1160. The court concluded that this affidavit contained only conclusory
statements that the target of arrest committed the crimes alleged, and as such was
"facially invalid." *Id.* at 1163. The were no facts that would have enabled the

magistrate to determine the veracity of the allegations, in particular, "how did the affiant come to these conclusions about Montes – did he have personal knowledge, or did someone tell him and if so, is the information reliable." *Id.* at 1163-64.  As the facts later evolved, the affiant had relied on witness statements to swear the affidavit, not on his own personal observations or investigation.  *Id.* at 1164.  This information was absent from the affidavit itself.  *Id.*  Without a "single piece of supporting information in the affidavit that would reasonably lead an officer to the mistaken conclusion that such an affidavit provided the magistrate with probable cause upon which to issue a warrant," the warrant was facially invalid.  *Id.* at 1164.  The arresting officer (who had not prepared the affidavit) was not objectively reasonable in relying on so conclusory an affidavit, thus he was not entitled to qualified immunity.

The affidavits before this court are as conclusory as the affidavits in *Butts* and *Montes*.  As demonstrated *supra*, there are no facts in the instant affidavits that allowed the issuing magistrate to make an independent link between the transaction for illegal drugs and someone named Samuel Ruiz.  The officers in *Butts* and *Montes* also relied – without so stating in their affidavits – on information from a witness without providing the requisite facts and circumstances to the issuing magistrate to allow the magistrate to infer that the witness was truthful, reliable, credible, or demonstrated a legitimate basis of knowledge.  This court draws the same conclusion achieved in *Butts* and *Montes*:  it is well below the standards of professionalism expected of police officers to issue such conclusory affidavits as the three at bar.  An objectively reasonable police officer would set forth at least minimal facts allowing the magistrate to conclude that probable cause to arrest

exists.  Any reasonably well-trained officer-affiant would identify the source of his or her information about the target of arrest.  If a witness or a confidential informant supplied information, the objectively reasonable affiant would set forth the factual basis of that person's reliability, credibility, or basis of knowledge and would include corroborating information garnered from the affiant's own investigation or observation.  These three affidavits, which fail to meet the standards of the type of affidavit that an objectively reasonable officer would submit, are not the result of a reasonable mistake as to the dictates of our Fourth Amendment jurisprudence.  The decision to set forth conclusory, bare-bones affidavits with no factual support for any of the conclusions stated within is an unacceptable error.  *See Malley*, 475 U.S. at 343-44.

**IV.**          **Conclusion**

          This is not a marginal case in which the court must decide the matter on the basis of the preference for warrants.  *C.f. Ventresca*, 380 U.S. at 109.   These affidavits violate the mandate of the Fourth Amendment in so profound a way that no reasonable police officer would have requested a warrant using these affidavits.  Accordingly, the defense of qualified immunity is denied.

                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  October 3, 2007.

27

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL RUIZ and CARMEN LYDIA FRET APONTE,** | : | **CIVIL NO. 1:04-CV-02359** |
| | : | |
| **Plaintiffs** | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **v.** | : | |
| | : | |
| **LEBANON COUNTY, PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT** the motion for summary judgment by Defendants Todd Breiner and Martin Barrett on the basis of qualified immunity (Doc. 64) is **DENIED**.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 3, 2007.